## MACKEN v. GASS.

District Court, W. D. New York.
May 6, 1938.

Weldgen, Newton, Morgan & Little, of Rochester, N. Y. (John C. Little, Jr., of Rochester, N. Y., of counsel), for plaintiff.

Judson B. Glen, of Rochester, N. Y., for defendant.

BURKE, District Judge.

This is an action by the plaintiff as trustee in bankruptcy to set aside transfers of real and personal property made by the bankrupt to his wife, the defendant herein, upon the ground that they are a fraud upon creditors. The bankrupt commenced an action against the Agate Ice Cream Company on September 23, 1932, to recover damages sustained in an automobile accident which occurred on August 20, 1932. This action finally resulted in a judgment for costs against the bankrupt in favor of the Agate Ice Cream Company which judgment was entered October 5, 1934. The judgment was assigned to the Jamestown Mutual Insurance Company.

On July 15, 1933, the bankrupt was involved in another automobile accident. He was joined as a codefendant with one Ralph S. Aronson in three separate actions to recover damages arising out of the accident brought by Mary Clark, Rosalie Rice, and Hattie Aronson, passengers in the Aronson car. These actions resulted in judgments in favor of the three plaintiffs totaling $3,617.50. Aronson was insured with the Aetna Insurance Company, which company on June 24, 1934, paid and satisfied these judgments. Upon such payment the Aetna Insurance Company became subrogated and succeeded to the right of Aronson to contribution from the bankrupt in one-half the amount so paid. New York Civil Practice Act, § 211-a.

The bankrupt filed a voluntary petition in bankruptcy on February 28, 1935, and was adjudicated a bankrupt on March 1, 1935. Claims were filed by the Jamestown Mutual Life Insurance Company and Aetna Insurance Company and the claims were allowed.

On or about November 1, 1933, and within four or five days after the service upon the bankrupt of the summons and complaint in the Aronson actions, the bankrupt conveyed to his wife his interest in three parcels of real estate, the title having theretofore stood in their joint names. He also assigned to her at the same time his interest in a mortgage held jointly by them upon which was unpaid $1,500. One of these parcels of real estate was the house in which the bankrupt and the defendant then lived and they still reside there.

The bankrupt and his wife had two joint bank accounts, one in the Lincoln Alliance Bank and one in the Monroe County Savings Bank. On July 17, 1933, two days after the Aronson accident, the defendant withdrew $1200.00 by New York draft from the Lincoln Alliance account and deposited the same to her personal account in the Monroe County Savings Bank. On the same date she withdrew in cash from the joint account in the Monroe County Savings Bank $117.01 and in cash from the joint account in the Lincoln Alliance Bank $351.80. These withdrawals closed the joint accounts. On August 3, 1933, she opened an account in her own name in the East Side Savings Bank by a deposit of $470, approximately the total of the two cash withdrawals of July 17, 1933.

The bill of complaint herein was served on the defendant March 17, 1936. On March 19, 1936, she had on deposit in her own name in the Monroe County Savings Bank $1,475.05 and withdrew $450 on that date. Several withdrawals were made thereafter and on May 11, 1936, by a final withdrawal of $849.05 the account was closed. On March 19, 1936, she had on deposit in the East Side Savings Bank $1,010.86. By May 12, 1936, this account had been reduced by withdrawals of $1,006.86, leaving only a negligible balance.

After the transfer of the bond and mortgage to the defendant payments were made in the same manner as theretofore and receipts of the bankrupt were given upon each of such payments with the exception of two instances when the defendant signed the receipts. All indorsements of payments on the bond were signed by the bankrupt.

■ The source of plaintiff's right to bring this action is section 70e of the Bankruptcy Act, 11 U.S.C.A. § 110(e). As trustee he has the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Section 47a–2 of the Bankruptcy Act, 11 U.S. C.A. § 75(a–2).

■ The right of the plaintiff to the relief sought is challenged upon the ground that neither the Jamestown Mutual Insurance Company nor the Aetna Insurance Company were creditors at the time the transfers were made. The Agate Ice Cream Company, assignor of the Jamestown Mutual Insurance Company, was a creditor within the meaning of the Debtor and Creditor Law at the time of the transfers. When suit was brought by the bankrupt against the Agate Ice Cream Company he became contingently liable for

costs. This is admitted by the answer. Section 270 of the New York Debtor and Creditor Law, Consol.Laws N.Y. c. 12, defines a creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." As assignee the Jamestown Mutual Insurance Company succeeded to all the rights of its assignor.

▮ The right of the Aetna Insurance Company stands upon a different footing. The relationship of debtor and creditor did not arise as between the bankrupt and Aronson until the judgment recovered against the bankrupt and Aronson was paid by the insurance company in his behalf. The Aetna was not a creditor of the bankrupt at the time of the transfers complained of, nor was Aronson to whose rights the company succeeded upon payment of the judgment. That, however, does not defeat the right to equitable relief. Under the present Debtor and Creditor Law the relationship of debtor and creditor at the time of the transfers is not a prerequisite to the right to relief as against conveyances fraudulent in fact. When intent to defraud either present or future creditors by a transfer of property is established, it is fraudulent as to both classes of creditors, and an action to set aside such a fraudulent transfer may be maintained by one who subsequently became a creditor.

▮ The defendant contends that the transfers were made in payment of an antecedent debt. The evidence produced to sustain this contention is not convincing. She testified that in 1919 she advanced $1,100 of her own money that she had made as a profit on the sale of a restaurant business, as a down payment on their home, and that the title was taken in their joint names as husband and wife. She had no source of income since that time except the rentals from part of their home which they had converted into an apartment. She also said that she had made a profit at one time of about $700 on the sale of some shares of stock. Out of these moneys she paid the taxes and interest since the purchase and paid off a mortgage of $1,650. In addition she claims to have loaned her husband, who was in the building business, considerably more than $4,000. There was no note or memorandum or any written evidence whatsoever to substantiate these transactions. No evidence was produced of any bank account to show the existence of her profits from the sale of the restaurant business. It rests solely upon her own testimony and that of her husband, the bankrupt. It is hard to believe that her income could have permitted over and above her expenditures the accumulation of $4,000 that might have been loaned to her husband. The evidence does not establish to the satisfaction of the court that the bankrupt was indebted to the defendant at the time of the transfers.

▮▮ When the transfers were made the bankrupt had creditors. The Agate Ice Cream Company was one. The three plaintiffs who ultimately secured judgments against the bankrupt and Aronson were also creditors, even though their claims were ex delicto. Leifer v. Murphy, 149 Misc. 455, 267 N.Y.S. 701. The circumstances surrounding the transfers, especially their proximity to the date of the accident out of which the claims grew, and the insolvency of the bankrupt occasioned by the transfers, impels the conclusion that they were made to place the bankrupt's property out of reach of his creditors and that both the bankrupt and the defendant were parties to the scheme. The transfers were not only presumptively but actually fraudulent.

▮ Where, as here, a transfer from husband to wife strips the former of all his property and leaves him insolvent, such a transaction must reveal good faith upon analysis, else it will not stand when challenged by creditors. Wilson v. Robinson, 2 Cir., 83 F.2d 397; White v. Benjamin, 150 N.Y. 258, 265, 44 N.E. 956, 958; Riker v. Gwynne, 129 App.Div. 112, 113 N.Y.S. 404.

▮ There remains only the question of what relief shall be granted. Setting aside the transfers of the real estate would be of doubtful value. The interest that the bankrupt had in the joint bank accounts has been dissipated by withdrawals by the defendant. The moneys secured by the mortgage have been paid in full. Equity will best be served by allowing a personal judgment against the defendant for the total of the claims which form the basis of this action, thus fitting the relief to the circumstances. Baily v. Hornthal, 154 N.Y. 648, 49 N.E. 56, 61 Am.St. Rep. 645.

Submit findings, conclusions, and a decree in accord with this opinion.